The Inevitable Discovery Doctrine cannot sidestep the exclusionary rule if some other hypothetical police officer, following proper procedures, could have discovered the evidence lawfully. Such a rule would eviscerate the protections of the Fourth Amendment. The doctrine instead can apply only where, as this Court said in Ramirez-Sandoval, the government proves that these particular officers, quote, would in fact have discovered the evidence in the absence of their constitutional violations. The District Court here admitted the evidence because the officers could have run a warrants check at the start of the traffic stop, and as a general matter, it is, quote, common and permitted for the officers, for officers to run a warrant check during a valid traffic stop. But there was no evidence that these particular officers would have run a warrants check in the absence of their extensive unlawful conduct. That is not disputed at this point, that they committed that unlawful conduct. And D, as the District Court- that they would have run, that would not have run the warrants check. You're saying that it was only because of the unconstitutional searches that they ran the warrants check, otherwise they would not have? Well, they spent 40 minutes illegally detaining Mr. Fahn, conducting what the District Court essentially found was a fishing expedition, and conducting multiple unlawful searches. Then they decided to arrest him. Right. Then they placed him in a police car, and then only then did they think to run the warrants check. But why is that proof that they wouldn't have run a warrants check anyway? Well, the question is whether the government proved by a preponderance of the evidence that they would have. I'm not saying that it proves that they wouldn't have, but that they offered no evidence that they actually would have done so during a routine, normal traffic stop where they didn't already decide to arrest Mr. Fahn. If I could point to two cases, both Lopez Soto from this court and Ramirez Sandoval, I think they really put us on all fours here. In Lopez Soto, the police officer was suspicious of the car. It was a car with foreign license plates. The officer thought it was driving illegally. He pulled it over because he thought the registration needed to be on the back of the windshield. The District Court said, well, even though that was an error, if he hadn't pulled them over in that way, he would have just driven a little further, seen that it was missing the required registration on the front, and the District Court assumed that he then would have lawfully pulled over the car, given that the officer was suspicious and did end up pulling over the car. This court reversed saying, no, we can't assume that because of the officer's suspicion, they would have followed up and discovered the evidence, done the same traffic stop anyway. There needs to be evidence in the record, like a declaration or testimony from the officers. Same in Ramirez Sandoval. The officer lawfully pulled over the car. He had a serious suspicion of narcotics trafficking. Routine questioning during that stop would have led to the same evidence, but the court said in the absence of evidence produced by the government, testimony from the officer about what they normally do during a traffic stop, a declaration, anything like that, we cannot assume that the officer would have taken the same steps, even if they were routine. But in Ramirez, if I may interrupt, in Ramirez Sandoval, the police officer, the issue there was questioning other occupants in the car. I don't think that's usually not a routine thing that police officers do when they stop a car, ask questions of the other occupants. But warrant check is one of the most routine things that police officers do. In fact, there's sometimes, you know, there's some criticisms of that, that maybe they have too much free reign to stop cars and ask for a warrant check. But it seems like it's a very ubiquitous and almost a routine procedure for, it's a standard operating procedure for most law enforcement officers when they stop a car. I understood, Your Honor, and I do agree that there's, you more typically expect a warrant check than the kind of questioning I'd issue in Ramirez Sandoval. But the court did note there, and there was no dispute in that case, that it would have been a regular thing for the officers to do, especially given their suspicion of narcotics trafficking. But also, I want to point out that on the record here, I mean, the question is if these officers would have followed the routine procedures in the absence of their unlawful conduct. And there was every reason to suspect that they were not following routine procedures.  But to be fair, the police officer did ask for his I.D. when they first stopped him. He couldn't find his I.D., which caused a delay. And then when they finally get the wallet, they find other evidence of potential crimes, multiple driver's license, gift cards. It seems like that's really what happened here, was they were going to do it. They got sidetracked because they couldn't find the I.D., then found other potential evidence of criminal activity. And eventually, they ended up, you know, doing the warrant check at the end. It just seems like they just got sidetracked. Well, the district court found that, sure, Mr. Phan didn't produce his wallet in that first 30 second period. But the district court found that he was not resisting or concealing his identity and that if they just gave him a little more time, I mean, the district court said it was reasonable for them to pull him out of the car. But then at that point, they could have just, you know, given him a little more time to produce the driver's license. And there was every reason to think that he would have. He complied. Is there any way to tell me is there any way to tell from the evidence in the case what the last thing was that happened before they did the warrant check, whether there was anything that triggered them doing that specifically, either whether it's from the testimony or from the video? I think in the video, what happens is they they they cuffed Mr. Phan. He's sitting there. They finish all their searches and everything, and then they put him in the back of the police car. The officer gets in the car with him and then runs the warrant check. That's after they've already found all the other IDs in his in his in his wallet and laid him out along the whatever it was they were laying him out on there. It was actually about 30 minutes after that, because after they laid out the IDs, they then searched the car and then they took him into the car and then they ran the warrants check. So it's really run like an afterthought here after they've fully decided to arrest him. Am I right? Am I right that the two main arresting officers at some point fairly early on sent the good here? We don't need you. That is correct, your honor. Yes, that was during warrant check. That's right, your honor. I mean, if they were busy with doing other things, if the officers who are first on the scene really thought that they had a lot on their hands, anyone there could have run a warrants check, but no one did it until after the arrest occurred. And I just don't think on this record there's any evidence that they, even though other reasonable officers do do warrants checks during routine traffic stops, I don't see any evidence on this record that they would have done so. And this court has repeatedly demanded some testimony from the officers about what they would have done in the absence of the unconstitutional conduct. I don't know if that's true, that we have repeatedly demanded testimony from the officers. What case are you citing for the proposition that in all of these cases, testimony from the officers is required? I appreciate that, your honor. I should have been a little more specific and said that some evidence of what they would have done otherwise from the government was required. In Ramirez-Sandoval, they point to the testimony of the lack of testimony from the officers. In Lopez Soto, they point to the absence of of any evidence produced by the government. And in the flip side, the cases that we cite where inevitable discovery was specific reference to the evidence produced by the government testimony, like in Rucks, that that the officer said this is what we would have done regardless of the illegal stops. Did any of those involve a warrant search? Do you have a case involving a warrant search where there was a requirement that the officers make a statement as to when they would have conducted the warrant search? We don't have a case with exactly the same set of facts here and like. It doesn't have to be the exact same set of facts, but is there a case involving a warrant search? Because as Judge Lee noted, these cases involve more more less routine processes than a warrant search. And so I was curious whether or not you have a case where we've said that the officers have to prove that ultimately they would have conducted a warrant search. I I just don't think it's there. Understood, Your Honor, and I see I'm running a little low on time, but I want to get to the special rebuttal. Thanks very much, Your Honor. I do think Ramirez-Sandoval is the closest we have, because although I understand Judge Lee's question from earlier, that it's not quite as routine the issue there as a warrant check. Nonetheless, a premise of that case was that this was a routine process that the district court had serious suspicions of narcotics trafficking there. And yet in the absence of evidence such as testimony or declaration or something else produced, the court would not assume that the officers would have gone through with that routine process. And that is really, I think, I think the strongest case. But I think Lopez Soto really builds on that as well. So counsel, what is our standard of review here? It is clear error, Your Honor. The question is whether the district court clearly erred in finding that the government proved by a preponderance of the evidence that the evidence would have been produced inevitably, discovered inevitably. And I would point out that clear error review does occur either where, you know, there's a lack of evidence, like we argued there is here, just simply there was no proof, or when if there is a legal error constitutes clear error in the ultimate determination. And this court recently said that in Reef Agardala, that's 891 F3rd 848. The point being that if the if the district court just misapprehended the legal rule, that's clear error or relied on an absence of evidence. And in our briefs, we argue that both happened here. All right. Thank you, counsel. You've exceeded your time, but we will give you one minute for rebuttal. We'll hear from the government. Thank you, Your Honor. May it please the court, Ian Yanello on behalf of the United States. I really think that the questioning by Judge Rawlinson and Judge Lee highlights the weakness of defendant's argument here. I'd also I'd point the court to the Supreme Court's decision in United States versus Rodriguez, which actually describes the police officer's mission. And as part of that mission during a traffic stop, officers, again, the court defined the mission as checking a driver's license and determining whether or not there are outstanding warrants on the driver. I think here, given the standard of review, the question is whether or not the district court's finding that the officers would have conducted that record check and would have inevitably discovered the evidence, whether or not that it was illogical, implausible or without support and inferences. What was the evidence that that finding was based on? What did the district court base that finding on? So the district court based that finding on on quite a quite a bit of evidence, first being, as Judge Rawlinson pointed out, the fact that officers did run ultimately run the search. But there's a lot more in this record. When officers stopped the defendant's vehicle at 1 a.m., the defendant showed the hallmark signs of somebody who was driving intoxicated, slurred speech, bloodshot and unfocused eyes. He was sweating profusely, even though it was cold outside. And it's important that officers asked for his driver's license initially and that defendant for 30 seconds looked through his wallet and failed to produce a driver's license. 30 seconds is a long time. And also part of the record is Officer Lopez's declaration, which stated he interpreted that based on his his training and experience. He found it suspicious that the defendant didn't produce that license. And in fact, he believed that the defendant may be trying to conceal something from officers. But how does that relate to the inevitability of doing a records check? The fact that there was some doubt about his identity? Well, the constellation of facts here, the circumstances that officers perceived, those are facts that district court knew. And the district court was entitled to draw reasonable inferences from those facts. I guess what I'm saying is I'm asking you to explain to me what the inference is, because I'm not seeing how the last point you made this doubt about his identity and proposition. He's trying to conceal it. I'm not I'm not seeing how that gets from point A to point B. So can you explain it to me? Sure. No problem. My my point is that it was entirely reasonable for the court to conclude that based on the defendant's demeanor and officers suspicion that he may be concealing his identity, that officers would have run the records check no matter what happened. And that's consistent. That's a logical conclusion from the constellation of facts that were at issue here. And also consistent. Every suppression hearing I've ever had where the government argues inevitable discovery, which is a pretty common thing, end up getting as the government puts in, like, a policy of the police department or a general order or something like that that says we always do an inventory search. We always do something along those lines. There wasn't anything like that here. And I'm just sort of curious why. Understand why you're. Sure. And I think a lot of that turns on. There would have been direct testimony, as Mr. Weiss points out, had the defendant actually raised these issues in the district. But the only inevitable discovery is a defense to suppression. It's your burden. Correct. But the parties litigated the only issue that the defendant raised in opposition of inevitable discovery, which was that it didn't that towing the vehicle didn't serve a community care taking function. And so that was what the parties focused on during the questioning of Officer Lopez. Certainly had the defendant raised whether or not officer asked a question or implied that Officer Lopez and his training officer at the time did not intend to conduct a records check. Again, part of the officer's mission in a traffic stop is to determine whether or not there's outstanding. What I'm wondering about that is, I mean, as a party with the burden of proof, I mean, let's say you're a plaintiff in a personal injury case. You're going to put in the you're going to put in what you need to put in to prove the And it's not just necessarily reactive to what the other side is. In other words, you don't decide to forget to put in evidence of causation because you don't think the other side's actually challenging it. And so I I guess I'm having a little bit of trouble with the idea with the defendant didn't raise this issue before the hearing, and therefore we didn't put in the you know, the most pertinent evidence on it. That doesn't make sense. When a trial lawyering. Yeah, I understood your honor. I think that the evidence is in the record. That's the government's position is that there is evidence in the record. There's not the direct testimony from an officer saying we would have conducted the records check, no matter what. But the facts in the record support that conclusion. The officers asked for his driver's license. The purpose of asking for a driver's license is so that the driver's license number can be run through a collect database inside of the officer's police car. And to answer your honor's question, which you pose the defense counsel. The from from my vantage point and from reviewing the video, it appeared that the officers, although they were delayed in conducting the records check, nothing abnormal prompted that check. Officer Gribbons, who was the training officer, took defendant's driver's license and ran the required information through the system and found the warrants. It appeared that it was merely just delayed in time because the officers were distracted. I think part of that was that Officer Lopez was a was being trained. He was a rather new officer, even though he had had somewhat substantial experience with the department as a police cadet. He was he had pulled somebody over at one in the morning and interpreted the defendant's conduct as not complying with his orders. The defendant didn't get out of the car right away, didn't produce a driver's license. And so there were factors that led to a delay in running the warrants check. But certainly officers did do that. And given the clear error standard of review, it was not implausible or logical for the district court to determine that based on all the evidence at issue, based on these facts, based on defendants demeanor, based on the fact that the Supreme Court has clearly stated that an officer's mission includes determining whether or not there's outstanding warrants on a defendant, that that conclusion supported. And I would just note also that the defendant's suggestion that officers could have conceivably just told the defendant to turn his lights on and let him go without conducting a records check, that would have been I submit that no officer would have done that. That would have been an illogical conclusion or an illogical thing to do, given the officer's duty to run the search and also given the fact that they believed he was potentially concealing his identity. I thought the defendant's main argument was this. It was, I think they cited a California Supreme Court case or something like that that said in this kind of situation, an officer doesn't have to do a records check and just can rely on a verbal confirmation of identity. I thought that was the main point. Sure, that's a California decision. I was citing to the US Supreme Court decision, which defined the kind of, it's a core duty or a core function of a police officer during a traffic stop to run that search. I did want to respond to Mr. Weiss's arguments related to the cases that he cites. The cases that the defendant relies on here are vastly different from the case here, not only on the point that both Judge Lee and Judge Rawlinson noted, which is the kind of core functioning of a records check, but both Ramirez-Sandoval and the other authorities that the defendant cited. Basically, the unconstitutional conduct by the officers prompted a new and independent investigation. In Ramirez-Sandoval, the officers saw what they perceived to be hand-to-hand drug transactions and then after illegally finding a notepad or a list of names, they started questioning the passengers of the car and conducting an independent investigation into alien smuggling. That's not the case here. The investigation involved the defendant being pulled over and a core function of that is the officers had to determine who he was and whether or not he had outstanding warrants. I'd also note that the other authority that Mr. Weiss cited, Lopez Soto, that involved an illegal traffic stop where the district court sui sponte applied the inevitable discovery doctrine. The government conceded in that case, and I believe they conceded certainly an oral argument I recall from the case, but possibly in their pleadings as well, that there was no evidence linked that would establish that the border patrol would have conducted that stop absent a misinformed belief that the defendant's registration needed to be in the back of his car with a Baja license plate. Those authorities really don't get to the point here, which is whether or not the clear error standard of review with the appropriate deference of the district court, whether the was illogical and unsupported by the record. And the government submits that it was entirely reasonable when the district court got it right. Thank you, counsel. One minute for rebuttal. Thank you, Your Honor. Starting with Rodriguez, what Rodriguez said is that during a typical traffic stop, part of the mission will often include running a warrants check. There's no rule that this is a duty or a requirement during a legal traffic stop. In fact, I think it's entirely speculative to say that officers would never pull someone over for a minor infraction and then not just give them a warning or a verbal, as opposed to running a warrants check. And this is the point that I think both this court's decisions in Young and Garcia make well, that if the officers have a discretionary decision to make without evidence as to what they would have done, the court cannot assume that they would have gone through with something, even if it's fairly routine. In Garcia, that was finding out that someone has a probation search term does not automatically make a search inevitable because it's a discretionary decision whether or not to do the search. In Young, motel staff found a gun, but it was still not inevitable that they would have called the police, even though it was likely. I see I'm out of time. We do seek reversal here. And unless the court has any other questions, we'll submit. Thank you, counsel. Thank you both for your helpful arguments. The case is submitted for decision by the court.
judges: RAWLINSON, LEE, Kennelly